Holder and Waggerby, 22-14126. It looks like we have Ms. Holt for Mr. Waggerby, Mr. Foxhall for Mr. Holder, Mr. Silverio for Mr. Brice. Ms. Holt, you're up first. Okay, very well. May it please the Court, Julie Holt on behalf of Uriah Waggerby, and I will be addressing the issue of whether the federal government has jurisdiction over the crime of conspiracy to commit Hobbs Act robbery, a crime not enumerated in the Major Crimes Act, when committed by an Indian, against an Indian, in Indian country, as this issue only applies to Mr. Waggerby. Can I ask maybe just sort of a threshold question? Am I right in understanding from the sort of the collective that you and the government have put before us that there are sort of like two paths to this jurisdiction? You're talking about this very reticulated path through like the ICCA and the ACA and the MCA, all of the CAs, and the government seems to say like, yeah, yeah, we'll give her that, but there's this alternative path for, you know, sort of like non-CITUS specific crimes of general application. Those just apply everywhere, so never mind all that stuff. What do you say to that piece? Yes, Judge. That that piece is completely contradictory to Supreme Court precedent and tribal sovereignty that has existed since the beginning. To find that there is just general jurisdiction would essentially apply the entire criminal code to crimes committed by Indians, against Indians, in Indian country, and the Supreme Court has been very clear that that piece, crimes committed amongst Indians in Indian country, is the piece of sovereignty that tribes have retained, so to find that there is jurisdiction. But just to, I understand your point on that, but I think the lines of precedent that Judge says, look, any state law crime that's committed on Indian country, that's also a crime on Indian country. That's sort of one way you get to a crime to be prosecuted, and with respect to that, I get it. Tribes are sovereign. They don't have to comply with state law generally. They don't have to like state law applying on their territory, but then sort of this other idea out here is, well, there's federal law that just applies. We're not prosecuting someone for a state law crime that's only federal because it's committed on Indian country. We're just, Congress can, I mean, I think you would agree, I mean, Congress can create crimes that are prosecutable against Indians, right? It can, but it's a clear expression of an intention to create federal jurisdiction is required, and the Supreme Court has been very clear about that. To be clear, the ACA does not apply in Indian country. That only applies in federal enclaves, and the Supreme Court has been clear that the status and where we start from when talking about tribal sovereignty is the exact opposite of what the government is saying. The government's saying that the general, the default rule is that there is federal jurisdiction for these crimes, for general, what they call these crimes of general applicability, but the reverse is true, and the Supreme Court has been very clear about this. What is true and what is the law is that the federal government does not have jurisdiction over crimes committed by Indians against Indians in Indian country unless and until Congress clearly expresses its intention to create that jurisdiction, and that Justice Gorsuch repeated that in 2020 in McGirt v. Oklahoma, and that's what we have to look at, and the government cannot and has not pointed to any clear expression by Congress that shows its intention to apply for there to be federal jurisdiction over the crime. Why would Congress exhibit that intention? Well, we see it... In the criminal statute, for example, or what? Yes, it would be in the criminal statute if Congress had that clear intention. So, I mean, so Congress would say, no cocaine in the United States of America. You're not allowed to sell cocaine, and then it would say, like, also, Indians can't sell cocaine. That's what they would say? That would be a clear expression, or they could... Why isn't it a clear expression if they just say no cocaine in the United States of America? Why isn't that a clear expression that they mean it to apply, like, the entire scope of the United States of America? Because, I mean, there's no clear expression in there. The clear... There's an implicit, right? You can say... I just... It feels like... I guess maybe we disagree about what express means. You're saying they don't single out Indian country for a special... Also, Indian country. But if they say, look, this law applies to everyone in the United States, whether you're Indian, it just doesn't matter. Like, the entire territory of the United States, you're not allowed to engage in this activity. How is that not expressed? Because there's no expression that it should be applying to Indian country. Is there any statute that does that? Is there any general federal criminal statute that embodies the sort of specific articulation that it applies to Indians in Indian country? There are expressions by Congress that include Indian country, yes. So we have the very clear ones, 1152 and 1153. But then we have other statutes where Congress specifically has said, Indian country, it applies in Indian country. And those are, for example, just to name a few, interstate stocking talks about if you're traveling from or to Indian country. Transportation of child pornography. Domestic violence by a habitual offender. Those are just a few where Congress has put in and expressly put in the statute that transporting something in and out of Indian country fits under this statute. Or doing something in Indian country fits under this statute. And then when you take 1951, the statute of conviction for Mr. Raggerby, and look at it, if it's clear about anything, it's clear that Congress did not intend. Because when you look at it and you look at the definition of commerce in 1951, there is no expression. There's no reference to Indian country at all. It talks about states. It talks about foreign. It does not talk about Indian country. So then when you compare that to these other statutes where Congress specifically does mention Indian country and how that applies, you cannot then say, oh, there's a clear expression here. And certainly Congress, the MCA and the ICA make very clear that Congress is well aware of its plenary power. Let me ask you this. I mean, I think this is a word to say that the definition of commerce is not good enough in the Hobbs Act. But it says all other commerce over which the United States has jurisdiction. Isn't it, isn't, isn't, I guess, and maybe this is just where we're, maybe I'm just, this is just where we disagree. But you say that when it says all other commerce over which the United States has jurisdiction, that's just not good enough. It has to specifically say an Indian country. It needs to be, yes, it needs to be an express, a clearly expressed intention. And this court has held that when... I guess, once again, why doesn't the language, all other commerce over which the United States has jurisdiction, why isn't that expressed that it means like, look, everything. I mean, that includes Indian country, includes whatever, any, any, anywhere the United States has jurisdiction. Like why? I just, I guess, I don't understand why express means specific discussion of Indians. And it doesn't just mean, look, it's got to make sure that we cover this. Because I think you can look clearly at the words, but you can also look at the history of sovereignty and the history of Supreme Court precedent, right? So this court has held that congressional abrogations of tribal sovereignty must be explicitly said in the statute itself, right? But then you look at, at where this, this would go. And what it would mean is that every single federal criminal, every single federal crime applies to Indians in Indian country or Indian when committed against an Indian in Indian country, because we know every federal crime has to have some federal hook in order for there to be jurisdiction at all. So by this definition, everything is going to apply. And then from there, that completely contradicts Supreme Court precedent, which has stated other than the crimes expressed or enumerated in the Major Crimes Act, all other crimes or all crimes committed by enrolled Indians against other Indians are subject to the jurisdiction of the tribal courts. So to find that one completely contradicts Supreme Court precedent, but also then upsets this carefully constructed constitutional balance that Congress has. I guess this is where, so you refer to the Major Crimes Act. If your read of the Major Crimes Act is right, I guess, let me ask it this way. What does the Major Crimes Act do in your mind? What is the effect? It provides federal jurisdiction for crimes committed by Indians against Indians in Indian country for this specifically enumerated crimes. The specifically enumerated crimes there are not federal crimes, right? Most of them are, but not all of them. Okay, which ones are federal crimes? There's murder, manslaughter. Murder, manslaughter, those are not federal crimes. There are federal enclave crimes for murder. I mean, they are because they're in Indian country. They're federal crimes. I guess my point is, aren't those crimes that are listed there not crimes that are created by federal statute otherwise? They're crimes because they're in Indian country. No, they're federal crimes. The statute actually refers to specific federal statutes for some of them. There is an enclave crime of murder. There's arson, manslaughter, but then it also covers, it refers specifically to crimes under Chapter 109A, which is the chapter of sex crimes. So you're looking, in some instances, it's referring specifically back to federal statutes. It also mentions the federal felony assault statute. So yes, the crimes in there are federal crimes. Some are enclave crimes, but many are not that it's listing. So the purpose of it is because without the Major Crimes Act, crimes committed by Indians against Indians in Indian country, there would be no federal jurisdiction for that at all. So it's listing these crimes. Most of them designated federally. But then it does have the subsection that says, yes, if there is not a federal definition, then you can use state law. But that, I think incest might be the last one that doesn't have a specifically federally listed crime. Okay. We've taken you well past your time, but you've got your two minutes of rebuttal time remaining. Thank you, Judge. Mr. Foxhall, you drew the short straw. You get to make your argument in one minute. I'll be sure, Your Honor. Roy Foxhall for Johan Holder. Your Honor, it's based on the case law. I'm going to concede to the government's position and hand back my time. Okay. Very well. Very good. Thank you. All right, Mr. Silverio, you've got four. May I please record, Daron Silverio for Mr. Sylvanus Bryce. At the heart of Mr. Bryce's appeal lies one error that is undisputed, because it has been conceded by the government. The district court failed to execute the requisite analysis under federal rule of evidence 609 when it admitted over defense counsel's objections Mr. Bryce's five prior felony convictions for felon in possession, fleeing and eluding, assault with a deadly weapon, felon in possession again, and battery by detaining. That error warrants reversal because the government cannot establish, cannot carry his burden of establishing that the error was harmless. In the alternative, if this court declines to reverse the conviction outright and order a new trial, Mr. Bryce requests the case be remanded pursuant to the former Fifth Circuit's decision in United States v. Preston to permit the district court to perform the requisite balancing test in the first instance. The government cannot show that the error was harmless for two big reasons. One, the quality of the evidence and what the government argued about the input of that evidence. So I'll begin with the quality as reflected in the record as a whole. Whenever victims of a crime fail to identify the defendant as a perpetrator, it's already a bad start for the government's case. But here, it takes three, there are three steps further beyond that. The two eyewitnesses who wrestled with the mass assailant who entered the Billy household, both of them identified, not only did they not identify Mr. Bryce, they affirmatively identified other people as the assailant. So Sonia Billy identified the father of Alice Billy's child, that's on day three of the trial at docket entry 423 as the assailant. Sonia's husband, Reuben Sonny Billy, who fought off the robber face-to-face, this is the same person the government claims was Mr. Bryce, he identified the assailant as Demarius Treadwell, that's docket entry 424 at 247 through 250. Now Sonny Billy didn't make that identification in the ether. He was presented photographs by the government days after the incident and specifically selected Demarius Treadwell. But it's not just the victims. Mr. Bryce's owned alleged co-conspirator, co-conspirator Mr. Waggerby, identified a whole different set of defendants as the people who were his co-conspirators. He did not identify Mr. Bryce. He said they were different people. Can I ask you just like about a piece of evidence that's on the other side, and I think at least runs to homelessness. What about the fact that your client confessed to author? Yes, so the crux of the government's case is basically Mr. Bryce's statements to the confidential informant as a recorded statement. And the cell site data. The cell site data, let's just set that aside for a second, because I do think the cell site data is an objective piece of evidence that generally places Mr. Bryce in the vicinity of their crime before and after. Cell site data does not, cannot on its own, establish every element of conspiracy or Hobbs Act, right? So you need, you need his statements to the CI. And we know you need those statements because the government told the jury. The government posed a rhetorical question. How did we actually solve this crime? That was on day two of trial. And it answered by said, listen to what he said, what he told Demarius, the master author, the CI. But that's actually the rub of, that's actually the issue with the case here, which is that Mr. Bryce's statements, the government wanted the jury to believe Mr. Bryce's statements when it was convenient for the government. Believe Mr. Bryce's statements when he's admitted to the crime, don't believe by the way, the portions of his statements to the CI, they're inconsistent with the evidence. There are certain things that Mr. Bryce said that we know absolutely did not occur because the witnesses said it didn't occur. Just to give you an example, he claims to have shot Ronnie Billy. Both witnesses who were wrestling with the person, the government says that Mr. Bryce said, no, somebody else shot that person. It wasn't, it wasn't the person I was wrestling with. That's just one example. He, he also, he also claims to have backed up with a car. Nobody saw a car. He, he claims to have been yelling at the people he was wrestling with inside the household. He was saying, I'm telling her, shut the baby up, don't move, shut the baby up. That's important because neither Sonia nor Sonny recall the person they were wrestling with saying anything at all. And that matters because they know Mr. Bryce. Sonny knows Mr. Bryce. So if Mr. Bryce is yelling and giving instructions to Sonia in the middle of that fight, you would think that they'd be able to, uh, to identify him. I just want to contrast the one case that was cited by the government, which is Burstyn. That case is not actually a case where the defendant's 609 is being admitted against the defendant. It's a case where the defendant attempted to impeach the government's witness, the, basically the flip, and the court limited the extent to which the defendant could, could impeach the, the flip based on, on 609 evidence. But what's, what's important about that case is when the court ultimately ruled that it was harmless, it went through a litany of reasons why, you know, for example, it said the defendant was able to impeach the witness. He was able to bring up the fact that the witness had a prior criminal conviction. But ultimately when the court got to the evidence's overwhelming problem, which is, which is a harmless test here, it identified four categories of evidence, three of which are absent here. Witness IDs, we have no witness IDs here. A getaway vehicle registered to the defendant. Again, objective evidence that's missing in this case. And the tools of the crime in that case, like basically the mask the guy was wearing for the post office robbery, were found in the defendant's possession. The fourth category, which is the defendant's admissions to a co-conspirator, that's the only thing we have in this case. Mr. Bryce's statements to a recorded CI. And I see my time is up. Thank you. Very well. You've got some rebuttal time remaining. Ms. Chang, let's hear from the government. Good morning. May it please the court, Emily Chang for the United States. If I may start with issue one with Mr. Waggerby's argument. I first want to point out that Mr. Waggerby's entire argument hinges on the premise that the district court lacked jurisdiction over his offenses because he's Indian. And he conspired against another Indian in Indian country. But that premise itself is inaccurate because the record shows that everything Waggerby did in furtherance of the conspiracy actually occurred outside Indian country in the town of Clewiston. The record reflects that Clewiston, the word Clewiston, refers both to the town and Clewiston, the reservation, which is 48 minutes south of the town. There are two totally different places. Government Exhibit 41A shows that. Document 426 at 123 establishes that. And Harlem is a neighborhood in Clewiston, the town. And Waggerby told the police he planned the robbery in Harlem, so Clewiston, the town, days before the robbery. That's where he told co-conspirators when to commit the robbery and where to meet him after. And then fast forward to November 1st, on the day of the robbery, he calls his co-conspirators from Harlem, so again, outside Indian country, and tells them to meet him in Harlem. And they meet him there and they follow him to the reservation. And it's not just Waggerby saying this. The cell site evidence bears this out as well. Waggerby, Bryce's, and Holder's phones are all in the Harlem area on the evening of the attempted robbery from 7 to 9 p.m. Then Holder's phone moves south, much closer to the reservation, by 10.30 p.m. And by 11.04, so half an hour before the attempted robbery, Bryce's phone is right by Rubin's house, which is on the reservation. So they all move from the town, outside Indian country, to the reservation. So even under Mr. Waggerby's own logic, the district court had jurisdiction because he did not commit his crime completely in Indian country. But I understand the court had a lot of questions about the enclave law versus the general federal laws, so I know it's important to hash that out. And where Mr. Waggerby committed his crime matters only if he was charged under an enclave law, and he wasn't. And I want to lay out the land just so we're all on the same page. There's two different sources of federal jurisdiction. There's enclave law on the one hand, and there's general laws of non-territorial application on the other. And the MCA and the ICCA, they all flow solely from enclave law. So there's this federal source of enclave law. That's the murder, the manslaughter, there's a kidnapping statute, I believe. And for those, situs is an element of the crime. So for the enclave laws to apply, you have to be somewhere specific, on a military base, in a federal park, or in Indian country. My co-counsel on the other side is incorrect that the enclave laws do not include Indian country. They do. Williams versus United States, which is a Supreme Court case from 1946, establishes that the ACA does apply to Indian country. So you have this federal source of enclave law, you have a state law source through the ACA, and all of those laws import over to Indian country through the ICCA. The MCA is just an exception to the ICCA. Because the ICCA says, well, if you're in a, if you are in Indian country and you've committed any crime that violates these enclave offenses, then there's federal jurisdiction, except if you're an Indian versus an Indian, or an Indian in Indian country, where the tribe hasn't punished you, or where the tribe has exclusive jurisdiction by treaty. And the MCA takes out from the ICCA 13 offenses and says, no, no, no, we're actually going to assert federal jurisdiction for these 13 offenses. But then, separate and apart from those enclave laws, so separate and apart from the ICCA and the ACA and the MCA, is the laws of general non-territorial applicability. And these apply no matter where you are, or no matter who you are. And I know Ms. Holt talked about how the Supreme Court precedent says, no, you have to expressly say that it's an Indian country. No, the Wheeler case from 1978, Supreme Court precedent, says in that case, the Supreme regardless of whether an Indian is involved, such as assaulting a federal officer. Moreover, in the 1960 Supreme Court case, the Federal Power Commission versus Tuscarora, the Supreme Court says that a general statute, in terms applying to all persons, includes Indians in the property interests. And so, Judge Brasher, that's what you were talking about when a law says no cocaine, or in this case, no marijuana, that encompasses everyone, whether or not you're an Indian country or whether or not you're an Indian. And so here, the district court had jurisdiction over Wagerby because his charges stemmed from the second set of laws, the general laws of non-territorial applicability. Not any enclave law, which is why the MCA doesn't even come into play here. The other point I want to make is... One question before you move on. Is there any... I mean, I guess I take Ms. Holt's sort of fundamental point to be, and I hope I'm not mischaracterizing this, but that there is just some tension between all of the reticulation in the ACA and the ICCA, and the MCA's exception to the ICCA, and then just sort of this blunderbuss sort of like, yeah, but there's general federal law that sort of washes all that stuff away and applies nonetheless. In the government's position, is there any tension between those two things? Do you see tension between those two things? I don't, Your Honor, because the tension... And I think the reason why... Actually, if you go back to the Crow Dog case, we see why the MCA was created, and that's because under the ICCA's limitations in the Crow Dog Supreme Court case, there was murder that happened from an Indian... One Indian murder in another Indian in Indian country, and the federal government had no jurisdiction over that. And Congress said, no, no, no, we don't want that. We want jurisdiction over certain crimes that are so serious that even though they're ordinarily only imported through state law, like through the ACA, we want jurisdiction over that. So that makes sense why the MCA carves out certain serious crimes like murder, kidnapping, burglary, arson. But on the other hand, this general, the yeah, but that you talk about makes total sense because Congress doesn't have the authority other than the MCA to legislate against a state law crime like murder, for instance. But for something like Hobbs Act robbery that involves the effect on total commerce, that's within Congress's purview. And every sort of general non-territorial statute involves Congress, like Congress had power to enact that legislation because it affects the whole country. So I don't see any attention at all. And another thing I wanted to clarify is that Hobbs Act robbery is not an enclave law. The situs of the offense is not, and I'm addressing this because it was in the reply brief and I didn't have a chance to address it. So the situs of the offense is not an element of Hobbs Act robbery. You don't have to be in a particular place for the law to take effect. Under Taylor versus United States, the Supreme Court reviewed section 1951 and explained as one of your honors mentioned that commerce is actually very broadly defined as including all other commerce over which the United States has jurisdiction. And in Gonzalez versus Reich, which is cited in Taylor, the Supreme Court held that the Commerce Clause gives Congress authority to regulate the national market for marijuana even with respect to purely intrastate production, possession, and sale based on their aggregate effect on interstate commerce. So you don't have an issue of one state to another state. That was what was suggested in the brief. Hobbs Act robbery requires the marijuana to travel from one place to another or from A to B, but attempting to rob a marijuana dealer of their drugs and drug money satisfies the commerce element even if it occurs intrastate. So even more obviously than other statutes, this is not an enclave law. Question for you that I don't know the answer to. When was the Major Crimes Act enacted? It was enacted after the Crow Dog case. Crow Dog case was in the 1880s, I believe. Something like that. I do not have the precise year for you. I'm happy to follow up with a letter. Well, here's why I asked the question. And I can just look at this myself, but I thought you might know is I don't know what the federal criminal laws looked like, I guess, at the point that the Major Crimes Act was enacted. It seems your theory of how to understand the Major Crimes Act is that, for example, when it says murder, manslaughter, kidnapping, maiming, incest, assault against an individual under the age of 16, these were probably things that the perception was at the time that were federal crimes in really any respect at all, probably because the perception was they couldn't make them federal crimes. I mean, that's why I asked about the timing. Right. That's right. And I would add that, although this court would not, I just want to add for your consideration that there's another statute in Title 28 that limits tribes and how much they can punish their tribe members under their criminal law. The max is nine years in a given case. So that means if Ms. Holt's view or Mr. Waggerby's view of the world were to hold true, let's say an Indian committed production of child pornography against another Indian in an Indian country, like, I don't know, across 10 years, and then also enticed a victim, and then also murdered someone, and then also kidnapped someone, the most under that statute, the punish that person is nine years, even though in federal court, that person would get a minimum of 15 years on the production alone, a minimum of 10 years on the enticement alone. So this doesn't, that view of the world doesn't square with the overall statutory structure. Turning to Mr. Bryce's issue about Rule 609, I first want to point out that the court, even though it did not make the finding on the record, and we concede that. We acknowledge that the court did not make its finding on the record. I do want to point out that the court did nevertheless . . . They entertained the argument, though. Yes, the court entertained the argument, and the court recognized . . . Which is what normally happens before a district judge. There's a proffer of evidence and an objection, and the court knows what law applies. It did in this case, as I understand it. Yes, the court . . . It's a balancing . . . The court showed that it understood its obligation by referencing, he said, well . . . That's why the court entertained the argument. Yes, the court entertained the argument and actually referenced that it had to do the, I think you'd call it the balancing exercise. But I can't find anything in the law about receiving evidence under, say, 404B or 609, whichever, where you're weighing prejudice versus probative value. I find nothing that says the court has to, as a matter of law, put it on the record, the balancing. I believe that the law required the district court to make an on-the-record finding. Well, sometimes . . . Many times, they're just implicit findings. I believe here it was an explicit on-the-record finding was required for Rule 609 balancing. The court, we acknowledge, did not do that. However, I just want to point out that the district court did it in its head, as reflected by the record, where the court . . . That came out with a conclusion. Yes, the court said only the first page . . . My point I'm making is, can we infer that the court properly applied the law to the arguments they were making and came to a conclusion that it's admissible? Yes, the court . . . This court, I believe, the records . . . Without making specific findings on the record. No, I think the law requires the district court to have made an on-the-record finding, and that wasn't done here. The court should have said, well, on the one hand, there's this, and on the other hand, there's this. I find, on balance, the probative value outweighs the prejudicial effect. What is the probative value of these convictions? I really don't get why the government is always trying to put someone's convictions in . . . It just makes no sense to me. There's no value in this. Why are you doing this all the time? Other than for the improper purpose of saying, like, this guy's a criminal over here, so you can convict him again and just have to cry. Like, what's the point? So, I think in this case, the prosecutors likely wanted to include this because it shows his character of not being willing to follow the law and . . . That sounds like an improper purpose. Well, it's not saying that . . . You know, he's committed crimes in the past. He's committed this crime, too. That's literally the reason you're not supposed to do this. No, sorry. I'm not articulating this well. It's not because . . . Yeah, I have a difficult . . . I mean, I'll just tell you, like, I see these cases all the time where the government, especially in Florida, this is a Florida thing for some reason, tries to get these convictions in, and they do, and I'm just scratching my head as to how this is probative at all. So, how is this probative? I mean, really. And it might be different if the convictions were for honesty-related crimes, but these are, what, possession of a firearm by a felon, aggravated assault with a deadly weapon . . . Battery and fleeing and eluding and such, yes. I mean, I think the . . . Let me ask you this. Was he willing to concede that he was a felon to try to keep this out? No, he was not. He was not allowed to . . . He was, I believe, offered that, and he wouldn't stipulate to that. So, I think . . . That makes him eligible. Right. And with respect to the harmlessness, I disagree with . . . Oh, I see I'm going to . . . I'm passing my time. Okay, I'm sorry. I'll be efficient. So, there are multiple sources. It's not just Mr. Bryce's say-so that he was guilty. We can start with the fact that Mr. Holder, in Mr. Bryce's presence, said, hey, he and I committed this robbery last night, and Bell testified to that at trial. It is important that Bryce admitted to all of . . . He bragged about his role in the offense. He provided very specific details that were not public, and it was confirmed at trial that these were not details that were public, and these were corroborated by other facts in the record. So, he said, Waggerby was not at the robbery. That's what Waggerby says. Bryce said that Bryce and his fellow robbers rode in their own car. It's also what Waggerby said. He described the AR rifle that they used, and it's consistent with the type of gun that was used to kill Ronnie. He said people were coming and going from the house when they were about to commit the robbery, and the surveillance video 10 minutes before the robbery shows people in the driveway. He describes how Reuben ran towards the house, and that there was a baby crying, and that's exactly consistent with what Sonia testified about and what the surveillance video shows. And he says that Ronnie's body done locked up when he was shot, and that's consistent with what the medical expert testified. Moreover, he describes his escape route. He says he goes to the south, tried to avoid the license plate readers, went up to South Bay, and then up to Sebring, and all of that is borne out by the cell site evidence. And so, there is abundant evidence. Oh, and also, Mr. Waggerby said he met with the co-conspirators on the night of the robbery, and they followed him from the town of Clewiston down to the reservation, as I mentioned before, and that is also borne out by the cell site evidence. So, it's not just Bryce's say-so. It is not just relying, I mean, it's important given that all that he said was corroborated by other evidence, but you have corroborating evidence from Mr. Waggerby, from Mr. Bell, and also from Mr. Holder. So, unless this court has other questions, I thank you for your time, and for the reasons we discussed here, and for the reasons stated in our brief, we ask the court to affirm. Thank you. Very well. All right, Ms. Holt, you've got two minutes. Thank you, Judge. Judge Brasher, to answer your question, the Major Crimes Act was passed in 1885, and there were, they were federal crimes at that time, and you can see as it's amended that they eventually added subsection saying, if there is not a federal crime such as incest, then you use the state crime. In response to the government, it's the government's burden to establish that jurisdiction exists, and the record is devoid of evidence that the locations that Mr. Waggerby talked about in his statement were outside of the reservation. The reservation is in Clewiston, so to say something happened in Clewiston... He commits some acts that gave rise to the conspiracy outside the reservation? No, the record... He did nothing whatsoever outside the reservation? The record does not establish that. The record establishes that he, according to his statement, he met with, he talked to people in Clewiston. That's what the record establishes. The record does not establish that that location was outside of the reservation, because the reservation is also in Clewiston, and in fact, and when you look at the indictment... You're talking about getting involved in a conspiracy, part of which occurred outside the reservation. Correct, there is... Part of this conspiracy occurred outside, would you agree? No, the record... The record establishes that if you take it in the light most favorable to the government, that it occurred in Clewiston, that's all. The reservation is in Clewiston, so you can be in Clewiston and you're on the reservation. I understand that. Correct, so the events that the government is speaking of, the record only establishes that those happened in Clewiston. That does not mean that they happened outside of the reservation. The indictment alleges that the conduct occurred on the Big Cypress Reservation, and even when you dig as deeply into Mr. Waggerby's statement that they played, the meeting that he's talking about, he is not even identifying any of the co-conspirators in the case. He's talking about entirely different people. To move to the government's statement of the Major Crimes Act, the Major Crimes Act is not an exception to the ICCA. The Major Crimes Act, as described by the Supreme Court, is a carefully limited intrusion into the tribal sovereignty over crimes committed by its members on its land. That's what it is. It is not specifically saying we are making some exception to this exception in the ICCA. Its intention was to give federal jurisdiction where tribal sovereignty previously existed, and I see my time is up. I just want to say very quickly, and then we'll end, that the government's relying on the case Federal Power Commission v. Tuscarora Indian Country or Indian Tribe, and that's dealing with a completely separate issue. It is not dealing with the issue of tribal sovereignty over crimes committed by its members, and Justice Ginsburg has stated that in U.S. v. Bryant very clearly, stating, although federal law generally governs an Indian country, Congress has long excluded from federal court jurisdiction crimes committed by an Indian against another Indian, and the Supreme Court has been very clear and very protective of this tribal sovereignty of crimes committed by Indians against Indians, and to find for the government here would completely erase this 200 years of jurisprudence and essentially eradicate tribal sovereignty over this conduct. Can I ask you one more question? Yes, of course. How does your conception work for victimless crimes? So we've been talking about marijuana, cocaine, and stuff like that. I mean, usually those are not fraud. There's no victim, right? So is it important? Well, just how does it work for you? That becomes very complicated, and I think the area of Indian law in general is very complicated, and the Supreme Court has stated it in two different ways, right? Justice Gorsuch said in McGirt that, I can quote, the court has long required a clear expression of the intention of Congress before it may try Indians for conduct on their land, right? So he doesn't specify Indian committing a crime against another Indian on Indian land. Justice Ginsburg and Bryant identifies a crime committed by an Indian against another Indian. So there is certainly jurisprudence saying that even if it's a victimless crime, the federal government still has no jurisdiction, and that really is the baseline. The tribes have retained this sovereignty over the conduct of their members on their land. So if there is a victim and it's not a member of the tribe, then that takes it certainly out of this. But even when there is no victim, that's still the conduct of the tribe member on the tribal land, and that's the sovereignty that the Supreme Court has held is the tribes certainly still retain and then has been very protected. So in sum, to answer that question, even if it's a victimless crime committed by a tribe, by a member of the tribe on the tribal land, then that would still be under tribal sovereignty. So your real rule that you're asking for is that there is no federal jurisdiction over whatever a tribal member does on tribal land unless the victim is a non-tribal member, right? That's what you're saying, that the rule is no jurisdiction to prosecute crimes by something that a tribal member does on tribal land, but the exception to that is if there's a victim of a crime who's not a tribal member. That's the rule you're asking for? No, I'm asking for something much more limited because in this case... To answer your question, I don't think... I'm not trying to trick you, I'm just... No, no, no, I think... So to answer your question, I don't think... I think that still falls under tribal sovereignty when it's a victimless crime and that there would need to be a clear expression of the intention of Congress to pull in federal jurisdiction to intrude on that traditional area of tribal sovereignty. In this case, we don't need to get there because what we have in this case is a crime committed by an Indian against an Indian in Indian country, and that is unquestionably protected by the Supreme Court and a protected area of tribal sovereignty. So what I'm asking for here is a much narrower finding that when you have a crime committed by an Indian against another Indian, specifically conspiracy to commit harm's act robbery, there is no federal jurisdiction because there has not been a clear expression of Congress to create it. Okay, very well. Thank you. Thank you. Mr. Foxhall, assuming you don't need your minute. Very well. Mr. Silverio, you've got one minute. So let me ask you. So the theory that the government used below to try to get these convictions in is that you had like a hearsay alibi going on? Yes, Your Honor. What is the probative nature of these convictions? That was their theory below. Your Honor, there is no probative nature of these specific convictions. That's actually the problem with the methodology the government used. And you don't have to just take my words for it as to what the probative nature. You can look at the government's own closing argument. Take a look at first page of the rebuttal. The government points out that the five convictions they just got in against Mr. Bryce and a conviction that they had gotten from Mr. Holder, they don't tie it to impeachment at all. They just say, go look at it and see what happened in those convictions. They don't tie it to impeachment at all, which is a problem, because normally when you admit evidence for a limited purpose, one of the things you need to worry about as a government is that you tie your argument to the permissible use of that evidence. They didn't do that in closing argument. I think that speaks volumes because the real reason these things were admitted was precisely what the former Fifth Circuit said you cannot do in United States versus Preston, which is there's a risk of prejudice, it's particularly high, where the former crime is of the same nature as of which the defendant is being tried, and they quote Justice Berger at the time, Judge Berger, there's an inevitable pressure on the lay jurist to believe that he did it before, he probably did it again this time. The government's theory in order to prove Hobbs Act basically depended on his confession to the CI, and they were introducing these limited convictions to show that basically this is, he's a guy who's done exactly this before. We've been talking about the Hobbs Act. Was there a felon in possession or a felon-related crime as well? There were five convictions. You're talking about the convictions that were admitted? No, no, no, I'm sorry. So in a case, for example, if you're prosecuted for being a felon in possession, obviously the government has to prove you were a felon, and sometimes the convictions are irrelevant to that. Is this a case like that? Nope, it's conspiracy to commit Hobbs Act and attended Hobbs Act, neither of which carry that as an element. I also dispute, and maybe the record will correct me, I'm not sure it's accurate to say he was offered that he can just accept his status as a felon, and that's the reason it had come in. If you look at the dispute about why these things were admitted, I think it occurs over two days, essentially. The judge asked, what's the dispute about the defense counsel and the government were going back and forth on how much of those certified convictions would come in? There's actually a colloquy where the judge admits, you probably don't want all that information that's listed on these pages in. The government agrees, yeah, I guess Ms. Schatz, who represented Mr. Bryce Blow, probably doesn't want all that in. Maybe we can stipulate as to how many pages we actually get into evidence. That was a discussion. And the next day, there was no stipulation to how many of those pages were coming in. I think in part because she wanted to preserve this use of 609 evidence. And the first words out of the judge's mouth after defense counsel said there's no stipulation, after the government said there's no stipulation, was, okay, first page of it, each is coming in. So I'm not sure that is this offer of felony that was being rebutted. It has to do with how many of those pages are coming in. To answer, just very quickly, my answer to Judge Schoflat's question, the on-the-record finding has to be made pursuant to United States v. Press. Your argument is that the convictions were probative of nothing at issue. That is correct. I mean, that's your argument. That is correct. But in weighing probative value against undue prejudice, there was nothing probative about the convictions. You know, in fairness to the government, they're going to say the probative nature here is that there was an out-of-court statement. Mr. Bryce's out-of-court statement was introduced on cross-examination. I understand that. So they're going to say it goes to whether he's a truthful person because his out-of-court statement was introduced. The problem with that, Your Honor, is that, again, there is a paradox to how much of Mr. Bryce the government wanted the jury to believe. Look, believe the parts that are convenient to us, that he participated, that he did A, B, and C. Ignore the parts that can't be squared with the evidence according to the other eyewitnesses. And by the way, he's untruthful as to his alibi. And again, I think that last part, he's only untruthful as to alibi, I think really sort of reveals what the purpose of these prior convictions were for, which is to say he's a bad guy who's used a deadly weapon before. He's assaulted people before. And that's what we're alleging occurred in this crime. And that is precisely the pernicious nature of these former convictions, then they shouldn't be allowed. And with that, Your Honor, I rest. Thank you. Very well. Thank you so much, all of you. The case is submitted. We'll move to the third and final case of the day. Elaine.